# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

WILLIE C. SIMPSON,

    Petitioner,

v.                                                     Case No. 02-C-1099

PHILLIP KINGSTON,

    Respondent.

## MEMORANDUM AND ORDER

### NATURE OF THE CASE

On November 13, 2002, Willie Simpson, an inmate at the Columbia Correctional Institution, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the ground that his state incarceration is in violation of his due process rights under the United States Constitution. United States District Judge Lynn Adelman conducted a preliminary examination of the petition in accordance with Rule 4 of the Rules Governing § 2254 Cases. By an order dated November 26, 2002, Judge Adelman determined that it did not plainly appear from the face of the petition that the petitioner was not entitled to relief, and ordered the respondent to answer the petition.

On January 13, 2003, the parties consented to the exercise of full jurisdiction by a magistrate judge, and the case was transferred to this court for all further proceedings, including entry of final judgment. 28 U.S.C. § 636(c); Fed. R. Civ. P. 72(c). The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according

to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). The petition for a writ of habeas corpus will be addressed herein.

## BACKGROUND

In 1997, a jury convicted the petitioner of second-degree sexual assault of a child. (Petition Under 28 U.S.C. §2254 for Writ of Habeas Corpus ["Petition"], Exh. 2 [Court of Appeals Decision of December 20, 2001] at ¶ 3). The circuit court imposed a fifteen-year sentence which was stayed and the petitioner was placed on probation for five years. Id. A condition of probation was that the petitioner serve one year at the House of Corrections, with four months to be served at the House of Corrections and the remainder on electronic monitoring. Id. During his probation, the petitioner was prohibited from violating any state or federal statutes and having any contact with minors without prior approval of his agent. Id.

The petitioner was arrested on September 21, 1999, and charged with sexual assault of a child. Id. at ¶ 4. Shortly thereafter, the Department of Corrections (DOC) recommended that the petitioner's probation be revoked because the petitioner had engaged in sexual contact with LeAnn H. – a six-year old minor – between January 1998 and September 1999. Id.

A revocation hearing was held at which time LeAnn's mother, Tracy H., testified that occasionally, the petitioner and his wife, Francesca, had provided childcare for LeAnn while Tracy was at work. Id. at ¶ 5. She further testified that after picking LeAnn up from school one day, LeAnn had complained to her mother that a janitor at school was teasing her. Id. Tracy stated that she had told LeAnn that "If anyone messes with you, you have to tell mama." Id. Tracy testified at the hearing that LeAnn then responded by stating, "I'm sorry. I've been keeping a secret from you." Id. When Tracy asked her what the secret was, LeAnn told her

- 2 -

that the petitioner had "messed with her." Id. According to Tracy's testimony, LeAnn further explained that when she spent the night at the Simpsons, the petitioner would take off her underwear and "rub[ ] his stuff on her." Id.

Police Officer Cheryl Lehnert, who works in a specialized unit dealing with sexual assaults, also testified at the revocation hearing. Id. at ¶ 6. Officer Lehnert had interviewed LeAnn after Tracy called the police on September 21, 1999. She testified that, according to her police report, she asked LeAnn "if anyone had touched her private parts." Id. In response, LeAnn had stated that "Will" had touched her, and that he had done it when she "spent the night over there," both when she was five and six years old. Id. LeAnn explained to Officer Lehnert that "Will" would wake her up while she was sleeping, take off her underwear, and "put his 'private parts' against her 'private parts' and would start humping her." Id.

Officer Lehnert further testified that in order to confirm that "Will" meant Willie Simpson, she asked LeAnn to identify where "Will" lived. Id. at ¶ 7. While driving in the car with Officer Lehnert, LeAnn correctly pointed to the petitioner's home without any coaching. Id. In her testimony, Officer Lehnert stated that she had interviewed LeAnn alone without the presence of her mother. Id.

Francesca Simpson, the petitioner's wife, also testified at the revocation hearing. She stated that LeAnn spent the night at the Simpsons' home on three occasions. Id. at ¶ 8. Francesca testified that on the night Tracy reported the assault to the police, she spoke with Tracy on the phone and that Tracy had told her that "somebody [is] messin' with my daughter, but I don't think it was Will [Simpson]." Francesca also spoke with LeAnn that night at which time LeAnn told Francessca that the petitioner had "touched" her on two occasions – one night when the power went out and while Francesca was in the shower and again when LeAnn

- 3 -

was sleeping in a tent made out of blankets with the Simpsons' daughter. Id. When Francesca asked LeAnn if anyone had made her say this, Francesca testified that LeAnn "took a long pause and then responded, 'What, Mommy, what?'" Id. Neither LeAnn nor the petitioner testified at the revocation hearing. Id.

In a written decision, the administrative law judge (ALJ) concluded that the petitioner violated his probation by having sexual contact with LeAnn. Id. at ¶ 9. The ALJ's decision was based on Tracy's testimony. Specifically, he found the "disclosures by L[eAnn] H. to her mother, Tracy H., to be reliable." Id. The ALJ then concluded that there were no appropriate alternatives to revocation. Id.

The petitioner unsuccessfully appealed the decision of the ALJ to the administrator of the Department of Hearings and Appeals (DHA). In sustaining the decision of the ALJ, the administrator of the DHA concluded that LeAnn's out-of-court statements bore "sufficient indicia of reliability to establish by a preponderance of the evidence that Mr. Simpson sexually assaulted her in violation of his probation rules." Id. The petitioner then filed a petition for a writ of certiorari in Milwaukee County Circuit Court which affirmed the decision of the DHA. Id.

Thereafter, the petitioner filed an appeal with the Wisconsin Court of Appeals. On appeal, the petitioner argued that his due process rights were violated at his revocation hearing when the ALJ failed to make a specific finding of good cause for not allowing him to cross-examine LeAnn as required by the decisions of the United States Supreme Court in Morrissey v. Brewer, 408 U.S. 471 (1972), and Gagnon v. Scarpelli, 411 U.S. 778 (1973). (Petition, Exh. 2 at ¶ 11.) While the court of appeals agreed that the ALJ's failure to make a specific finding of good cause violated Morrissey and Gagnon, it found the error to be

- 4 -

harmless under the harmless error standard set forth in Chapman v. California, 386 U.S. 18, 23-24 (1967). Id. Based on this conclusion, the court of appeals affirmed the petitioner's revocation of probation. Id. at ¶ 16.

The petitioner filed a petition for review with the Wisconsin Supreme Court. The Wisconsin Supreme Court denied the petition for review on March 19, 2002. On November 13, 2002, the petitioner filed his petition for a writ of habeas corpus with this court.

## **ANALYSIS**

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214, which provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

It is undisputed that the decision of the state court of appeals affirming the petitioner's probation revocation was an adjudication on the merits under §2254(d). In his petition for federal habeas corpus relief and supporting briefs, the petitioner finds fault with the decision of the Wisconsin Court of Appeals that the Morrissey/Gagnon violation by the ALJ constituted

- 5 -

harmless error.[1] The petitioner argues that the error was not harmless under the standard set forth by the United States Supreme Court in Brecht v. Abrahamson, 507 U.S. 619 (1993), and that he is therefore entitled to a finding that his probation revocation was unconstitutional.

As a preliminary matter, the petitioner argues that the standard of review identified by the AEDPA in 28 U.S.C. §2254(d)(1) does not apply to federal habeas petitions, such as his, which challenge a state court's finding of harmless error.[2] See Petitioner's Reply Brief at 1-2. Rather, he argues that the governing standard of review in this case is set forth in Brecht, 507 U.S. 619, in which the United States Supreme Court identified the harmless error standard on collateral review as whether the constitutional error "had substantial and injurious effect or influence in determining the jury's verdict." Id. at 638.

Contrary to the petitioner's assertion, the United States Supreme Court and the Court of Appeals for the Seventh Circuit have concluded that the standard identified in §2254(d)(1) is the appropriate standard of review when reviewing a state court's finding of harmless error. See Mitchell v. Esparza, 540 U.S. 12 (2003) (Section 2254[d][1] applied on collateral review of state court's finding that trial counsel's error was harmless); Ben-Yisrayl v. Davis, 431 F.3d 1043 (7th Cir. 2005) (Section 2254[d][1] applied on review of state court's finding that prosecutor's statements in closing argument regarding defendant's failure to testify was harmless error); and Aleman v. Sternes, 320 F.3d 687 (7th Cir. 2003) (Section 2254[d][1]

---

[1] The respondent describes the petitioner's challenge to the state court decision as two-fold: (1) that the harmless error rule does not apply to constitutional errors involving Morrissey/Gagnon violations; and (2) that the court of appeals' conclusion that the violation constituted harmless error was itself erroneous. In his reply brief, the petitioner makes it clear that he is not arguing that the harmless error rule should not have been applied to his claim. See Reply brief at 8. Rather, his argument is solely that the court of appeals erred in how it applied the harmless error rule to his case. Moreover, the Supreme Court has held that Confrontation Clause violations are subject to harmless error review. Coy v. Iowa, 487 U.S. 1012, 1021-1022 (1998).

[2] The petitioner does not challenge the sufficiency of the evidence in this case, nor is he arguing that the decision of the Wisconsin Court of Appeals was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under §2254(d)(2).

- 6 -

applied on review of state court's finding that prosecutor's comments to the jury regarding defendant's failure to testify was harmless error). Indeed, the court of appeals for this circuit has instructed that "[w]hen the state court concludes that any error was or would be harmless, that finding is subject to the same standard of review as any other legal conclusion – de novo. . .. That is, we must accept it unless it is contrary to or represents an unreasonable application of clearly established law" under §2254(d)(1). Ben-Yisrayl, 431 F.3d at 1052 (citing Mitchell, 540 U.S. at 17-18) (internal citations omitted).

The standard enunciated in Brecht remains relevant after the passage of the AEDPA, but, contrary to the petitioner's argument, it does not supplant the standard of review set forth in §2254(d)(1). See Aleman, 320 F.3d 687. Instead, the Brecht standard advocated by the petitioner comes into play if the court on habeas review determines that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law under § 2254(d)(1). See Aleman, 320 F.3d at 690. At that point, a petitioner is not automatically entitled to the writ of habeas corpus. He must still establish his entitlement to habeas corpus relief under 28 U.S.C. §2254(a), which provides that the court may issue "a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." As stated by the Court of Appeals for the Seventh Circuit, "[w]hether a given person's custody violates the Constitution, laws or treaties of the United States depends . . . on whether any error caused the custody. That is where Brecht's harmless error doctrine enters; . . .. " Id. Therefore, this court need not address the Brecht harmless error standard if it finds that the petitioner is barred from habeas corpus relief under §2254(d)(1). Id.

Having concluded that the standard set forth in §2254(d)(1) applies in this case, a discussion of the legal contours of that standard is appropriate. A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." Washington v. Smith, 219 F.3d 620, 628 (7th Cir. 2000) (quoting Williams v. Taylor, 529 U.S. 462, 404 [2000]). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> under the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

Washington, 219 F.3d at 628. The court went on to explain that the "unreasonable application of" clause of §2254(d)(1) was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" Id. (quoting Williams, 529 U.S. at 413).

To constitute an "unreasonable application" of federal law, a state court ruling must be "more than incorrect or erroneous," Lockyer v. Andrade, 538 U.S. 63 (2003) (citing Williams, 529 U.S. at 410, 412), and perhaps more than "clearly erroneous," Hennon v. Cooper, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." Hall v. Washington, 106 F.3d 742, 748-49 (7th Cir. 1997). In Morgan v. Krenke, the court explained that:

> [u]nreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

- 8 -

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting Williams, 529 U.S. at 411). Therefore, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. Washington, 219 F.3d at 628.

As a threshold matter, the court must decide what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1). "Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" Lockyer, 538 U.S. at 71 (quoting Williams, 529 U.S. at 412).

Clearly established Supreme Court law unequivocally requires a hearing examiner to find that good cause exists when he/she prohibits confrontation of an adverse witness at a probation revocation hearing. See Gagnon, 411 U.S. 778; Morrissey, 408 U.S. 471; Black v. Romano, 471 U.S. 606 (1985). The Wisconsin Court of Appeals, applying the controlling federal case law, found that the ALJ erred by failing to comply with Morrissey when he failed to make a finding of good cause for not allowing the petitioner to confront LeAnn H. at the probation revocation hearing. (Petition Exh. 2 at 7-8). The petitioner does not disagree with this conclusion.

However, the state appellate court went on to conclude that the ALJ's failure to specifically find good cause was harmless error because "good cause existed and its basis is found in the record, and because the ALJ found specifically that the evidence was reliable." Petition Exh. 2 at ¶ 30. This conclusion is the basis of the petitioner's federal habeas challenge.

The Supreme Court in Chapman v. California, 386 U.S. 18 (1967), set forth the test for determining whether a constitutional error is harmless. The test is whether it appears "beyond

- 9 -

a reasonable doubt that the error complained of did not contribute to the [decision] obtained." Id. at 24; see also Ben-Yisrayl, 431 F.3d at 1052. If the error complained of contributed to the decision obtained, then the error is not harmless. Chapman, 386 U.S. at 24.

The petitioner argues that the state appellate court's decision was "contrary to federal harmless rule" (sic) because the state appellate court's review amounted to an attempt "to correct the error itself." See Petitioner's Memorandum of Law in Support of Petition at 6. However, the Supreme Court has held that a reviewing court conducting harmless error analysis must scrutinize the actual basis on which the finder of fact rested its decision and consider the entire record. Sullivan v. Louisiana, 508 U.S. 275, 279 (1993); Mack v. Battaglia, 385 F. Supp. 2d 751, 766 (N.D. Ill. 2005).

It is undisputed that the entire record was reviewed by the Wisconsin Court of Appeals. The fact that the state appellate court used the factors set forth in State v. Sorenson, 143 Wis. 2d 226, 421 N.W. 2d 77 (Wis. 1998), to assess the ALJ's finding that the testimony was reliable even though the ALJ did not utilize those factors does not establish that the state appellate court was "correct[ing] the error itself." Rather, the court was utilizing controlling precedent to evaluate the ALJ's reliability determination.

Moreover, the petitioner has not cited to any Supreme Court case law (nor has the court's own research uncovered any) which holds that the failure to find good cause for not allowing confrontation is not subject to a harmless error analysis. Therefore, the decision of the Wisconsin Court of Appeals applying the Chapman harmless error analysis to the petitioner's case is not "contrary to . . . clearly established Federal law." 28 U.S.C. 2254(d)(1).

The question now becomes whether the decision of the Wisconsin Court of Appeals constitutes an "unreasonable *application* of clearly established Federal law." 28 U.S.C. §2254(d)(1)(emphasis added). As stated, in making this determination, this court "may not grant [petitioner's] habeas petition, . . . if the state court simply erred in concluding that the State's errors were harmless; rather, habeas relief is appropriate only if the [Wisconsin] Court of Appeals applied harmless-error review in an 'objectively unreasonable' manner." Mitchell, 540 U.S. at 18 (citing Lockyer, 538 U.S. at 75-77).

The Wisconsin Court of Appeals' conclusion that the ALJ's failure to make a specific finding of good cause amounted to harmless error was based on its determination that good cause was implicit in the record. That determination was in turn based on the court's findings that the good cause requirement of Morrissey is "always met when the evidence offered in lieu of an adverse witness' live testimony would be admissible under the Wisconsin Rules of Evidence" (Petition Exh. 2 at ¶ 11), and that the ALJ specifically found that LeAnn's statements to her mother and Officer Lehnert were reliable. Both of these findings were premised on the court's assessment of whether LeAnn's hearsay testimony was sufficiently trustworthy.

In other words, the state appellate court applied the test in Chapman and concluded that the ALJ's failure to make a good cause determination did not affect the outcome of the case because there was no constitutional barrier to considering the hearsay testimony since such evidence would have been admissible under state evidentiary rules, namely, the residual hearsay exception under Wis. Stat. §908.03(24), and such testimony was independently reliable. See Petition, Exh. 2 at ¶ 8, 11, citing State v. ex rel. Prellwitz v. Schmidt, 73 Wis. 2d 35, 39, 242 N.W.2d 227 (Wis. 1976). Furthermore, the court noted that while the decision of

- 11 -

the ALJ to revoke the petitioner's probation was based entirely on hearsay evidence, such evidence is sufficient to prove a probation violation so long as it is reliable. See Petition, Exh. 2, ¶ 16 at fn. 6.

In reviewing the ALJ's finding that LeAnn's hearsay testimony was independently reliable, the state appellate court considered many factors including LeAnn's age, her ability to communicate verbally, her ability to identify the difference between male and female anatomy, her awareness of the difference between falsity and truth and the lack of anything in LeAnn's statements which showed signs of falsity. The ALJ further found that LeAnn was not prompted by her mother or Officer Lehnert to identify the petitioner, that LeAnn spoke to Officer Lehnert alone so she wasn't coached by her mother during the interview, that LeAnn volunteered "sufficiently graphic accounts of sexual contact [which suggested] the source of her knowledge was within the realm of her experience," and that LeAnn's statements to her mother and Officer Lehnert were consistent. See Petition, Exh. 2 at ¶¶ 12-16.

The petitioner asserts that the Wisconsin Court of Appeals' finding of harmless error was an unreasonable application of federal law because it was based on an incorrect finding that LeAnn's hearsay testimony was reliable. Specifically, he argues that LeAnn made inconsistent statements and that when asked in March 1999, "if the petitioner had ever touched her . . . she said NO." See Reply Brief at 11, Appendix 101. However, the finding by the state appellate court that the petitioner had told LeAnn not to tell anyone about the incident, (which is not challenged by the petitioner), explains this apparent inconsistency in LeAnn's testimony.

The petitioner also asserts that the state court's finding that LeAnn's testimony was reliable is erroneous in view of the testimony from Tracy that she had lied to Francesca

- 12 -

Simpson when she told her that LeAnn had "already told the teachers and stuff" about the assault. See Reply Brief at 11, Appendix 102. The petitioner contends that this testimony calls into question the veracity of Tracy's testimony concerning LeAnn's statements about the assault.

The state appellate court rejected a similar challenge to Tracy's testimony on the ground that the petitioner had not offered a motive as to why Tracy would fabricate testimony. See Petition, Exh. 2 at ¶¶ 13-14. Here too, the petitioner points to nothing in the record to support such a motive. Further, the state appellate court accurately recognized that Tracy's testimony did not call into question the testimony of Officer Lehnert which also established the reliability of LeAnn's hearsay statements. Again, the petitioner has presented the court with nothing to suggest that the state appellate court's finding in this regard was incorrect or unreasonable.

Finally, the petitioner contends that LeAnn's testimony was not reliable because there was no physical evidence to corroborate the hearsay. However, as aptly noted by the court of appeals, there is no reason why there should be any physical evidence in view of the fact that there was no allegation by LeAnn that there had been any penetration by the petitioner. LeAnn's description of the assault was that the petitioner had taken off her underwear and "rubbed" his "private parts" on her "private parts." The petitioner points to nothing in the record that is inconsistent with these findings by the state appellate court.

The court finds that the petitioner has not sufficiently called into question the state appellate court's conclusion that good cause was implicit in the record. Based on a review of the record, the court agrees that the outcome of the probation revocation proceeding would have been the same had the ALJ made a specific finding of good cause to admit the hearsay

- 13 -

testimony of LeAnn. Thus, the court cannot say that the state court's conclusion that the ALJ's error was harmless was objectively unreasonable under §2254(d)(1).[3] Accordingly, the petitioner is not entitled to a writ of habeas corpus.

## CONCLUSION

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus be and hereby is **denied**.

**IT IS FURTHER ORDERED** that this action be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 2nd day of February, 2006.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge

---

[3] Because the court finds that the state court did not unreasonably apply <u>Chapman</u> or reach a decision contrary to it the court need not apply the harmless error standard of <u>Brecht</u>, 507 U.S. 623, as urged by the petitioner. See <u>Aleman</u>, 320 F.3d at 690.